**FILED**

**SEP 2 9 2021**

**U. S. DISTRICT COURT**
**EASTERN DISTRICT OF MO**
**ST. LOUIS**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

UNITED STATES OF AMERICA,            )
                                     )
            Plaintiff,               )
                                     )
v.                                   )
                                     )
CHRISTOPHER "CHRIS" LEE CARROLL,     )      **4:21CR532 SEP/SRW**
                                     )
            and                      )
                                     )
GEORGE REED,                         )
                                     )
            Defendants.              )
                                     )

## INDICTMENT

The Grand Jury charges that, at all times relevant to the Indictment:

1.      From in or about March 2020 through in or about at least March 2021, Defendant

**CHRISTOPHER "CHRIS" LEE CARROLL** ("Defendant Chris Carroll") and Defendant

**GEORGE REED** ("Defendant George Reed") (collectively "the Defendants") engaged in a

scheme to defraud a federally insured financial institution and to engage in monetary transactions

in property derived from specified unlawful activity, all in violation of 18 U.S.C. § § 1344 and

1957.

2.      Defendant Chris Carroll and Defendant George Reed sought and obtained funds

from the Paycheck Protection Program by means of material misrepresentations, to wit, that they

would use those funds to compensate their employees, when in truth and fact, the Defendants used

the loan proceeds to acquire assets, including vehicles and land, and to fund deposits into the

Defendants' personal bank accounts.

1

**INTRODUCTION**

3.      At all times relevant herein, Defendant Chris Carroll and Defendant George Reed resided within the Eastern District of Missouri.

4.      Defendant Chris Carroll was convicted of a felony offense in 1995 and was on parole in the State of Missouri until December 9, 2020.

**THE PAYCHECK PROTECTION PROGRAM**

5.      The United States Small Business Administration ("SBA") is an Executive-branch agency of the United States government that provides support to entrepreneurs and small businesses. The mission of the SBA is to maintain and strengthen the nation's economy by enabling the establishment and viability of small businesses and by assisting in economic recovery after disasters.

6.      The Coronavirus Aid, Relief, and Economic Security ("CARES") Act, Pub. L. No. 116-136,134 Stat. 281 (2020), is a federal law that was enacted in or around March 2020 to provide emergency financial assistance to the millions of Americans suffering the economic impact caused by the COVID-19 pandemic. One source of relief provided for in the CARES Act was the authorization of forgivable loans to small businesses for job retention and certain other expenses through the Paycheck Protection Program ("PPP"). The purpose of loans issued under the PPP was to enable small businesses suffering from the economic downturn to continue to pay salary, wages and to provide benefits, such as health insurance coverage, to their employees.

7.      To obtain a PPP loan, a qualifying business was required to submit a PPP loan application, signed by an authorized representative of the business. The PPP loan application required the business to acknowledge the program rules and make certain affirmative certifications to obtain the PPP loan. In the PPP loan application (SBA Form 2483), the small business (through

2

its authorized representative) was required to certify: (a) that the small business was in operation on February 15, 2020; (b) the average monthly payroll expenses; and (c) the number of employees. These certifications were used to calculate the amount of money the small business was permitted to receive under the PPP. In addition, businesses applying for PPP loans were required to submit documentation supporting their payroll expenses.

8.     PPP loan funds were required to be used only on certain permissible expenses, including payroll costs, mortgage interest, rent and utilities for the business. In the PPP loan application (SBA Form 2483), the borrower was required to certify that "[a]ll SBA loan proceeds will be used only for business-related purposes as specified in the loan application and consistent with the Paycheck Protection Program Rule." In that same application, the borrower was also required to certify that "[t]he funds will be used to retain workers and maintain payroll or make mortgage interest payments, lease payments, and utility payments, as specified under the Paycheck Protection Program Rule."

9.     The application advised the borrower that "[w]ith respect to 'purpose of the loan,' payroll costs consist of compensation to employees (whose principal place of residence is the United States) in the form of salary, wages, *commissions*, or similar compensation," including "payment for the provision of employee benefits consisting of group health care coverage including insurance premiums" (emphasis added).

10.     The application asked whether "the Applicant (if an individual) or any individual owning 20% or more of the equity of the Applicant subject to an indictment, criminal information, arraignment, or other means by which formal criminal charges are brought in any jurisdiction, or presently incarcerated, or on probation or parole?" Applicants were required to certify a "yes" or "no" response to that question.

3

11.     Further, the application asked whether "within the last 5 years, for any felony, has the Applicant (if an individual) or any owner of the Applicant 1) been convicted; 2) pleaded guilty; 3) pleaded nolo contendere; 4) been placed on pretrial diversion; or 5) been placed on any form of parole or probation (including probation before judgment)?" Applicants were required to certify a "yes" or "no" response.

12.     The PPP application further advised the borrowers that "if the funds are knowingly used for unauthorized purposes, the federal government may hold me legally liable, such as for charges of fraud."

13.     After the borrower submitted the PPP loan application, that application was then processed by a participating lender. If a PPP loan application was approved, the participating lender funded the loan using its own monies, which were then guaranteed by the SBA. Generally, in the event that the borrower defaulted on a PPP loan, the SBA would purchase the borrower's debt from the lending financial institution and take on the responsibility for paying back the loan.

14.     Under the applicable PPP rules and guidance, recipients of PPP loans could apply to have the interest and principal on the PPP loan fully forgiven, meaning that the borrower would owe nothing and would have no obligation to repay the PPP loan. To obtain full forgiveness of the PPP loan, borrowers had to attest that they had "not reduced the number of employees or the average paid hours of [their] employees" during the loan period, that the loan proceeds had been spent on payroll costs and other permitted expenses and that at least 60% of the loan proceeds had been spent on payroll costs.

15.     Borrowers who qualified for and received a "First Draw" PPP loan were permitted to apply for a "Second Draw" PPP loan, provided that the borrower had (a) previously received a First Draw PPP loan and had used the full amount only for authorized uses; (b) had no more than

4

300 employees; and (c) could demonstrate at least a 25% reduction in gross receipts between comparable quarters in 2019 and 2020.

16.     Like the First Draw PPP loans, Second Draw PPP loans could only be used for certain permitted expenses, such as to fund payroll costs and employee benefits, such as health insurance, to pay for mortgage interest, rent, utilities or worker protection costs related to COVID-19.

17.     In obtaining a Second Draw PPP loan, borrowers were required to certify that they had used the First Draw PPP loan only for permitted expenses.

## SQUARE ONE GROUP, LLC

18.     Square One Group, LLC ("Square One Group") was a timeshare exit company that offered to assist individuals in extricating themselves from the ownership or lease of unwanted timeshare properties.  Square One Group employed teams of travelling salespeople who met with potential Square One Group customers and gave sales presentations marketing Square One Group's timeshare exit services.

19.     Square One Group was registered as a corporation with the Missouri Secretary of State's Office on or about September 17, 2019. According to documents filed with the Missouri Secretary of State's Office, Square One Group had a principal office address located at 120 South Central Avenue, Clayton, Missouri, 63105, which is located within the Eastern District of Missouri.

20.     Square One Group's Limited Liability Company Operating Agreement, dated September 17, 2019, described Square One Group as a "manager-managed limited liability company," and provided that Square One Group "shall be managed" by Defendant Chris Carroll

5

and Defendant George Reed. Defendants Chris Carroll and George Reed were the only two signatories to Square One Group's Operating Agreement.

21.    Square One Group's Operating Agreement further provided that Defendant Chris Carroll and Defendant George Reed "shall have full and complete authority, power and discretion to manage and control the business, affairs and properties of the Company, to make all decisions regarding those matters and to perform any and all acts or activities customary or incident to the management of the Company's business."

22.    Defendant Chris Carroll and Defendant George Reed each received an annual salary of $265,000.00 from Square One Group, which they were paid in weekly installments of $5,000.00.

23.    Defendant Chris Carroll and Defendant George Reed were also compensated by Square One Group by means of "owner disbursements" drawn on Square One Group's operating accounts. At Defendant Chris Carroll and Defendant George Reed's direction, multiple times per year, Square One Group's Director of Finance would make simultaneous owner draw payments to Defendant Chris Carroll and Defendant George Reed in equal amounts ranging from $1,000.00 to $250,000.00. Defendant George Reed's compensation was always made payable to "LAR," his wife, but the funds were deposited into a joint account held by Defendant George Reed and his wife.

24.    Approximately two-thirds of Square One Group's employees were sales staff. Square One Group's revenue was generated by the sales made by the sales staff. These sales staff did not receive a salary, but instead, were paid by a commission that was a percentage of any sales of Square One Group's timeshare exit services that a sales staff member was able to make. Sales staff's compensation was tied solely to their successful sale of Square One Group's services. If a

6

customer later cancelled the payment to Square One Group, the sales staff member's commission was reduced accordingly.

25.    Approximately one-third of Square One Group's employees were salaried staff responsible for managing the business operations and administrative business functions of Square One Group.  One member of the salaried staff was "MT," Square One Group's Director of Finance, whose responsibilities included calculating sales commission payments to the sales staff.

26.    Square One Group maintained two bank accounts at Enterprise Bank, account ***0058 and account ***1234.  These accounts, to which Defendant Chris Carroll and Defendant George Reed were signatories, were used to handle Square One Group's business transactions, including payroll payments, payment of operating expenses, and to receive deposits of customer payments generated by the sales teams.

27.    Enterprise Bank and Trust ("Enterprise Bank") was a financial institution within the meaning of Title 18, United States Code, §§ 20 and 1344, the deposits of which were insured by the Federal Deposit Insurance Corporation.

## THE SCHEME TO DEFRAUD

28.    From in or about March 2020 through in or about at least March 2021, Defendant Chris Carroll and Defendant George Reed knowingly executed and attempted to execute a scheme and artifice to defraud Enterprise Bank and Trust and to obtain moneys, funds, assets, and other property owned by, and under the custody and control of Enterprise Bank and Trust by means of materially false and fraudulent pretenses, representations, and promises, to wit, false and fraudulent representations in the applications for First and Second Draw PPP loans issued to Square One Group and in the application for forgiveness of the First Draw PPP loan issued to

Square One Group, all in violation of 18 U.S.C. § 1344. The manner and means of the scheme to defraud were as follows:

## THE DEFENDANTS MADE MATERIAL MISREPRESENTATIONS IN SQUARE ONE GROUP'S FIRST DRAW PPP LOAN APPLICATION

29.　　In or about early April 2020, Defendant Chris Carroll, in consultation with Defendant George Reed, directed Square One Group's Director of Finance, MT, to apply for a PPP loan through Enterprise Bank, the financial institution where Square One Group had its operating accounts.

30.　　Acting on instructions from Defendant Chris Carroll and Defendant George Reed, MT completed the First Draw PPP loan application on behalf of Square One Group to obtain what Defendant Chris Carroll described as "$1.6 million in free dollars." As a part of that application, Square One Group submitted to Enterprise Bank a payroll spreadsheet listing employee compensation. That payroll spreadsheet identified 97 Square One Group employees. Square One Group sought a PPP loan in the amount of $1,247,820.30, a figure which was based on the average monthly compensation during January and February 2020 of the 97 employees listed in the payroll spreadsheet. Of the 97 employees listed in Square One Group's PPP loan application, 60 were commission-based sales staff.

31.　　The loan application did not identify Defendant George Reed or Defendant Chris Carroll as the representatives of the applicant borrower. The loan application listed MT as the representative of Square One Group, and listed the wife of Defendant Chris Carroll, "KAC," and the wife of Defendant George Reed, LAR, as Square One Group's managers. At the time of the submission of the PPP loan application, KAC had never had any role in the operation of Square One Group. LAR had a minimal role in the company consisting of minor administrative tasks she completed at the direction of Defendant George Reed. KAC and LAR had no physical presence

8

at the company and no involvement in decisions impacting the business. The names of Defendant Chris Carroll and Defendant George Reed were omitted from and did not appear on the face of the loan application.

32.    In the application, with the knowledge and approval of Defendant Chris Carroll and Defendant George Reed, MT responded "no" to the question whether "the Applicant (if an individual) or any individual owning 20% or more of the equity of the Applicant subject to an indictment, criminal information, arraignment, or other means by which formal criminal charges are brought in any jurisdiction, or presently incarcerated, or on probation or parole?"

33.    In the application, with the knowledge and approval of Defendant Chris Carroll and Defendant George Reed, MT responded "no" to the question whether "within the last 5 years, for any felony, has the Applicant (if an individual) or any owner of the Applicant 1) been convicted; 2) pleaded guilty; 3) pleaded nolo contendere; 4) been placed on pretrial diversion; or 5) been placed on any form of parole or probation (including probation before judgment)?"  Applicants were required to certify a "yes" or "no" response to that question.

34.    In truth and in fact, at the time the PPP application was completed and submitted, as both Defendant Chris Carroll and Defendant George Reed knew, Defendant Chris Carroll, who was an owner of Square One Group, was on parole following a term of imprisonment arising from a felony conviction.  MT did not know this fact at the time Mt completed and submitted the First Draw PPP loan application.

35.    As part of the loan application, Enterprise Bank required Square One Group to submit the company's Operating Agreement, which identified Defendant Chris Carroll and Defendant George Reed as Square One Group's managers.

36.    Defendant Chris Carroll and Defendant George Reed caused MT to certify falsely

on behalf of Square One Group that:

> The funds will be used to retain workers and maintain payroll or make mortgage interest payments, lease payments, and utility payments as specified under the Paycheck Protection Program Rule[.]

37.     At the direction of Defendant Chris Carroll and Defendant George Reed, MT submitted the First Draw PPP loan application on behalf of Square One Group on or about April 6, 2020.

38.     Following the submission of the First Draw PPP loan application, Enterprise Bank, in reliance on Square One Group's representations in its loan application, approved the First Draw PPP loan in the amount of $1,247,800.00.

39.     Enterprise Bank required that Defendant Chris Carroll and Defendant George Reed, as Square One Group's two managers identified in the Operating Agreement, sign the note for the loan before the loan proceeds could be disbursed.  On or about April 28, 2020, Defendant Chris Carroll and Defendant George Reed signed the note for the First Draw PPP loan on behalf of Square One Group.

40.     In signing the First Draw PPP loan note, Defendant Chris Carroll and Defendant George Reed acknowledged their understanding that the loan would be defaulted if they were to "make[]; or anyone acting on their behalf makes, a materially false or misleading representation to Lender or SBA."

41.     On May 1, 2020, $1,247,800.00 in First Draw PPP loan proceeds was deposited into Square One Group's Enterprise Bank account ***0058.

42.     Enterprise Bank and Trust ("Enterprise Bank") was a financial institution within the meaning of Title 18, United States Code, §§ 20 and 1344, the deposits of which were insured by the Federal Deposit Insurance Corporation.

**DESPITE THEIR CERTIFICATION IN THE FIRST DRAW PPP APPLICATION,
THE DEFENDANTS DID NOT USE PPP FUNDS
TO COMPENSATE SQUARE ONE GROUP'S EMPLOYEES**

43.    Defendant Chris Carroll and Defendant George Reed never used or attempted to use the PPP funds to compensate Square One Group's employees or to maintain their benefits. Even after Square One Group received PPP funds, Defendant Chris Carroll and Defendant George Reed continued to compensate their sales staff by means of commissions made from revenue actually generated by those employees. Defendant Chris Carroll and Defendant George Reed "furloughed," in other words, sent home without compensation, their sales staff at the outset of the COVID-19 pandemic as a result of the reduced sales opportunities available during the pandemic.

44.    Even after receipt of the PPP loan proceeds, Defendant Chris Carroll and Defendant George Reed did not inform the employees of Square One Group that the company had received more than $1.2 million in PPP loan proceeds that were intended primarily to provide employee compensation. Instead, Defendants George Reed and Defendant Chris Carroll continued to require that their sales staff make sales and generate revenue in order to receive compensation, despite the fact that to make in-person sales, employees would have to travel during a global pandemic and meet in-person with potential customers.

45.    Defendant George Reed and Defendant Chris Carroll did offer sales staff the opportunity to attempt to make sales via online meetings and debt collection phone calls to existing customers, but when those meetings proved substantially less profitable than in-person sales, Defendant Chris Carroll and Defendant George Reed did not offer to supplement the significantly reduced commissions of the sales staff using the PPP funds, despite Square One Group's representation that they would use the PPP funds "to retain workers and maintain payroll."

46.    When sales staff expressed concerns about not receiving compensation to

11

Defendant Chris Carroll, he instructed them that they could collect unemployment benefits, despite the fact that Square One Group had received over $1.2 million in First Draw PPP funds intended to provide employee compensation.

47.     When sales staff were unable to make sales as a result of the pandemic, Defendant Chris Carroll instructed MT to suspend employees' health insurance benefits.

48.     During the covered period of the First Draw PPP loan, which was from May 1, 2020 until October 15, 2020, Defendant Chris Carroll and Defendant George Reed did make payroll payments equal to the amount of the PPP loan, but the sole source of compensation for Square One Group's sales staff was the commissions on sales revenue generated by the employees themselves. Although Defendant Chris Carroll and Defendant George Reed continued to make payroll payments, they did so with the revenue generated by the sales staff. If a sales staff member did not generate revenue, Defendant Chris Carroll and Defendant George Reed did not compensate that person.

49.     During the covered period of the loan, Square One Group's sales staff was able to generate sufficient revenue to pay all of Square One Group's operating costs, including payroll costs for the approximately one-third of the employees who were salaried staff.

50.     Despite the COVID-19 pandemic, at the direction of Defendant Chris Carroll and Defendant George Reed, the sales staff resumed travel in June of 2020. Defendant Chris Carroll and Defendant George Reed did not use the First Draw PPP loan proceeds to provide the furloughed employees with backpay for the time that they had been unable to earn commissions. Defendant Chris Carroll and Defendant George Reed also did not use First Draw PPP funds to compensate those employees for out-of-pocket medical costs the employees had incurred because Square One Group had suspended their health insurance coverage during the furlough period.

12

## THE DEFENDANTS USED FIRST DRAW PPP LOAN PROCEEDS TO FUND THE STARTUP OF WHISKEY DIX BIG TRUCK REPAIR, SQUARE ONE LOGISTICS & SQUARE ONE TRANSPORT

51.     The First Draw PPP loan proceeds in the amount of $1,247,800.00 were deposited into Square One Group's Enterprise Bank account ***0058 on May 1, 2020.

52.     Beginning on May 15, 2020 and continuing through June 2020, Defendant Chris Carroll and Defendant George Read spent $1.9 million from the Square One Group operating account ***0058 to acquire trucks, trailers, and land to start three new businesses unrelated to Square One Group's timeshare exit business.

53.     The three new businesses started by Defendant Chris Carroll and Defendant George Reed were Whiskey Dix Big Truck Repair; Square One Logistics; and Square One Transport. Whiskey Dix Big Truck Repair was a truck repair business located in Bourbon, Missouri in the Eastern District of Missouri.  Square One Transport was a trucking company that provided freight transport services and was located on the same property as Whiskey Dix Big Truck Repair.  Square One Logistics is a holding company that owns the assets, including land and trucks, that were acquired by Defendant Chris Carroll and Defendant George Reed to start Whiskey Dix Big Truck Repair and Square One Transport and Logistics.

54.     On May 15, 2020, Defendant Chris Carroll and Defendant George Reed caused the filing of Articles of Organization for Square One Logistics, LLC with the Missouri Secretary of State.

55.     On May 15, 2020, Defendant George Reed wired $354,550.00 from Enterprise Bank account ***0058 to Taylor and Martin Auctioneers for the purchase of 12 trucks.

56.     On May 22, 2020, Defendant Chris Carroll and Defendant George Reed caused the wiring of $563,035.00 from Enterprise Bank account ***0058 to Taylor & Martin Auctioneers for

the purchase of 24 trucks, vans and trailers.

57.     On May 26, 2020, Defendant Chris Carroll and Defendant George Reed caused the transfer of $140,000.00 from Enterprise Bank account ***0058 to TNT sales for the purchase of five trailers.

58.     On May 26, 2020, Defendant Chris Carroll and Defendant George Reed registered Whiskey Dix Big Truck Repair, LLC with the Missouri Secretary of State.

59.     On June 2, 2020, Defendant Chris Carroll made a payment of $47,000.00 from Enterprise Bank account ***0058 to Twin City Auto and Towing for the purchase of one truck.

60.     On June 4, 2020, Defendant Chris Carroll and Defendant George Reed caused the transfer of $27,153.58 from Enterprise Bank account ***0058 to Ritchie Bros Auctioneers for the purchase of one truck.

61.     On June 5, 2020, Defendant Chris Carroll and Defendant George Reed caused the transfer of $42,000.00 from Enterprise Bank account ***0058 to Taylor & Martin Auctioneers for the purchase of one truck.

62.     On June 11, 2020, Defendant Chris Carroll and Defendant George Reed caused the issuance of a payment of $698,683.29 from Enterprise Bank ***0058 to Crawford County Title for the purchase of land in Bourbon, Missouri that became the site of Whiskey Dix Big Truck Repair and Square One Transport.

63.     On June 18, 2020, Defendant Chris Carroll and Defendant George Reed caused the filing of Articles of Organization for Square One Transport, LLC with the Missouri Secretary of State.

64.     On June 19, 2020, Defendant Chris Carroll and Defendant George Reed caused the issuance of a payment in the amount of $32,025.00 from Enterprise Bank account ***0058 to

14

Taylor & Martin Auctioneers for the purchase of two trucks.

65.     Prior to their receipt of the First Draw PPP loan proceeds, Defendant Chris Carroll and Defendant George Reed had not acquired any assets for Whiskey Dix Big Truck Repair, Square One Transport or Square One Logistics.

66.     Without the deposit of $1.2 million in First Draw PPP money, Defendant Chris Carroll and Defendant George Reed did not have sufficient funds in Square One Group's bank accounts to start Whiskey Dix Big Truck Repair, Square One Logistics and Square One Transport.

## THE DEFENDANTS MADE MATERIAL MISREPRESENTATIONS IN THEIR APPLICATION FOR FORGIVENESS OF THE FIRST DRAW PPP LOAN

67.     On November 24, 2020, Defendant George Reed, with the knowledge of Defendant Chris Carroll, completed and submitted an application for forgiveness of the full amount of Square One Group's $1,247,800.00 First Draw PPP loan.

68.     In Square One Group's First Draw PPP loan forgiveness application, Defendant George Reed falsely indicated that Square One Group had "not reduced the number of employees or the average paid hours of [their] employees between January 1, 2020 and the end of the Covered Period," despite the fact that, as Defendant Chris Carroll and Defendant George Reed knew, Square One Group had furloughed its sales force and suspended their compensation for a period of more than two months.

69.     In that forgiveness application, the sole cost Defendant George Reed listed on behalf of Square One Group in support of forgiveness was Square One Group's payroll cost. Defendant George Reed falsely certified on behalf of Square One Group that the "dollar amount for which forgiveness is requested was used to pay costs that are eligible for forgiveness [and]. . . included payroll costs equal to at least 60% of the forgiveness amount[.]"

70.     Defendant George Reed further certified that "I understand that if the funds were

knowingly used for unauthorized purposes, the federal government may pursue recovery of loan amounts and/or civil or criminal fraud charges."

71.    After Defendant George Reed submitted the application, based upon the representations in that application, Enterprise Bank approved Square One Group's application for forgiveness, and Square One Group was absolved of any obligation to repay the First Draw PPP loan.

## THE DEFENDANTS MADE MATERIAL MISREPRESENTATIONS IN SQUARE ONE GROUP'S SECOND DRAW PPP LOAN APPLICATION

72.    On or about January 21, 2021, Defendant George Reed caused the submission to Enterprise Bank of a Second Draw PPP loan application on behalf of Square One Group.

73.    Defendant George Reed caused the Second Draw PPP loan application to be completed in the name of his wife, LAR, rather than his own name or the name of Defendant Chris Carroll.

74.    Defendant George Reed knowingly caused the submission of false certification in the Second Draw PPP loan application that Square One Group had used "the full amount of the First Draw PPP loan (including any increase) of the First Draw Paycheck Protection Program Loan for permitted expenses."

75.    Defendant George Reed knowingly caused the submission of a false certification in the Second Draw PPP loan application that Square One Group would use the PPP funds "to retain workers and maintain payroll."

76.    After Defendant George Reed caused the submission of the Second Draw PPP loan application to Enterprise Bank, the bank, in reliance on the representations made in the application, approved the loan in the amount of $1,663,830.00.

77.    On or about February 26, 2021, Defendant Chris Carroll and Defendant George

Reed signed the note on the Second Draw PPP loan.

78.    On March 1, 2021, $1,663,830.00 in PPP loan proceeds was deposited into Square One Group's Enterprise Bank account ***0058.

## THE DEFENDANTS USED SECOND DRAW PPP LOAN PROCEEDS TO COMPENSATE THEMSELVES

79.    On March 5, 2021, four days after the deposit of the Second Draw PPP loan proceeds, Defendant Chris Carroll cashed a $160,000.00 "owner draw" check drawn on Enterprise account ***0058.

80.    On March 12, 2021, Defendant Chris Carroll received a $250,000.00 "owner draw" wire transfer from Enterprise Bank account ***0058 into his personal bank account.

81.    On March 12, 2021, Defendant George Reed received a $250,000.00 "owner draw" wire transfer from Enterprise Bank account ***0058 into his personal bank account.

82.    Without the deposit of the Second Draw PPP loan funds, Square One Group could not have funded $660,000.00 in owner draws from Enterprise Bank account ***0058 over a seven-day period to Defendant Chris Carroll and Defendant George Reed.

83.    Even after Square One Group received the Second Draw PPP loan proceeds, Defendant Chris Carroll and Defendant George Reed continued to require sales staff to travel in an effort to make sales and continued to compensate them based solely on commissions generated only from sales they were able to make.

84.    Sales staff, who continued to be required to travel in an effort to make sales at the direction of Defendant Chris Carroll and Defendant George Reed, were able to generate sufficient revenue to fund Square One Group's operations, including the payroll payments for salaried staff.

85.    As with the First Draw PPP loan proceeds, at no point did Defendant Chris Carroll or Defendant George Reed offer to supplement or provide employee compensation using the

17

Second Draw PPP loan funds.

## COUNTS 1-3
### Bank Fraud (18 U.S.C. §§ 1344 & 2)

86.    The allegations in paragraphs 1 through 85 are hereby realleged and incorporated herein.

87.    From in or about at least March 2020 through at least in or about March 2021, in the Eastern District of Missouri, the Defendants,

### CHRISTOPHER "CHRIS" LEE CARROLL
### and
### GEORGE REED,

aiding and abetting each other, willfully and knowingly executed, and attempted to execute, a scheme and artifice to defraud a financial institution, the deposits of which were insured by the Federal Deposit Insurance Corporation ("FDIC"), and to obtain moneys, funds, credits, assets, securities, and other property owned by, and under the custody and control of, such financial institutions, by means of false and fraudulent pretenses, representations, and promises, to wit, the Defendants engaged in a scheme to obtain over $2,900,000.00 in Government-guaranteed loans from an FDIC-insured bank through the PPP by means of false and fraudulent and representations, through and by means of the following executions of the scheme:

| COUNT | DATE | SUBMISSION TO ENTERPRISE BANK |
|---|---|---|
| 1 | April 6, 2020 | First Draw PPP Loan Application submitted on behalf of Square One Group |
| 2 | November 24, 2020 | Application for Forgiveness of First Draw PPP Loan issued to Square One Group |
| 3 | January 21, 2020 | Second Draw PPP Loan Application submitted on behalf of Square One Group |

All in violation of 18 U.S.C. §§ 1344 & 2.

## COUNTS 4-9
### Money Laundering (18 U.S.C. §§ 1957 & 2)

88.     The allegations in paragraphs 1 through 87 are hereby realleged and incorporated herein.

89.     On or about the dates described below, in the Eastern District of Missouri, the Defendants,

### CHRISTOPHER "CHRIS" LEE CARROLL
### and
### GEORGE REED,

aiding and abetting each other, did knowingly engage and attempt to engage in monetary transactions by, through or to a financial institution, affecting interstate or foreign commerce, in criminally derived property of a value greater than $10,000, that is the transfer of funds, such property having been derived from a specified unlawful activity, that is, bank fraud, in violation of 18 U.S.C. § 1344, as follows:

| COUNT | DATE | TRANSACTION |
|-------|------|-------------|
| 4 | May 22, 2020 | Wire Transfer of $563,035.00 from Enterprise Bank account ***0058 to Taylor and Martin Auctioneers. |
| 5 | May 26, 2020 | Wire Transfer of $140,000.00 from Enterprise Bank account ***0058 to TNT Sales |
| 6 | June 11, 2020 | Wire transfer of $698,683.29 to Crawford County Title |
| 7 | March 5, 2021 | Deposit of $160,000.00 check drawn on Enterprise Bank account ***0058 into personal bank account of Defendant Chris Carroll |
| 8 | March 12, 2021 | Wire Transfer of $250,000.00 from Enterprise Bank account ***0058 to personal bank account of Defendant Chris Carroll |
| 9 | March 12, 2021 | Wire Transfer of $250,000.00 from Enterprise Bank account ***0058 to personal bank account of Defendant George Reed |

All in violation of 18 U.S.C. §§ 1957 & 2.

## FORFEITURE ALLEGATION

The Grand Jury further alleges there is probable cause that:

1.       Pursuant to Title 18, United States Code, Sections 981 and 982(a)(1) and Title 28, United States Code, Section 2461, upon conviction of an offense in violation of Title 18, United States Code, Sections 1344 and 1957, the Defendants shall forfeit to the United States of America any property, real or personal, which constitutes or is derived from proceeds traceable to such violation or any property involved in such violation.  Subject to forfeiture is a sum of money equal to the amount of $2,911,630.00 or to the total value of any property, real or personal, which constitutes or is derived from proceeds traceable to such violation.

2.       Pursuant to Title 18, United States Code, Sections 982(a)(2), upon conviction of an offense in violation of Title 18, United States Code, Section 1344 as set forth in Counts 1,2 and 3, the Defendants shall forfeit to the United States of America any property constituting, or derived from, any proceeds obtained, directly or indirectly, as a result of such violation.  Subject to forfeiture is a sum of money equal to the total value of any property, real or personal, constituting or derived from any proceeds traceable to such violation.

3.       Pursuant to Title 18, United States Code, Sections 982(a), upon conviction of an offense in violation of Title 18, United States Code, Section 1957, as set forth in Counts 4-9, the Defendants shall forfeit to the United States of America any property, real or personal, involved in such offense, and any property traceable to such property.  Subject to forfeiture is a sum of money equal to the total value of any property, real or personal, involved in such offense, or any property traceable to such property.

4.       Specific property subject to forfeiture includes, but is not limited to, the following:

a.  Approximately $250,000.00 in funds from bank account #***4356 at First State Community Bank, Farmington, MO;

b.  Approximately $11,530.98 in funds from bank account #***9779 at UMB Bank, Kansas City, MO;

c.  380 Landon Road, Bourbon, MO 65441, with all appurtenances, attachments, improvements, and fixtures thereon;

d.  2005 Wabash National Corp – Van, VIN: 1JJV532W75L942781;

e.  2008 Reitnouer – Flatbed, VIN: 1RND53A208R021231;

f.  2008 Reitnouer – Flatbed, VIN: 1RND53A228R021232;

g.  2008 Utility Trailer MFG – Van, VIN: 1UYVS25328G417011;

h.  2009 Trail King – Lowboy, VIN: 1TKJ048219W097519;

i.  2009 Utility Trailer MFG – Van, VIN: 1UYVS25319P594201;

j.  2009 Utility Trailer MFG – Van, VIN: 1UYVS25389P594213;

k.  2009 Utility Trailer MFG – Van, VIN: 1UYVS25389P594311;

l.  2009 Wabash National Corp – Van, VIN: 1JJV532W29L316514;

m.  2012 East Manufacturing – Flatbed, VIN: 1E1H5Y284CRG46525;

n.  2013 International Prostar – Tractor Truck – LF627 Premium, VIN: 3HSDJAPR1DN359175;

o.  2013 Kenworth Construction – Tractor Truck – T600, VIN: 1XKAD49X3DJ334169;

p.  2013 Peterbilt 587 - Tractor Truck, VIN: 1XP4D49X1DD180695;

q.  2014 Great Dane Trailers – Van, VIN: 1GRAA0625EW701217;

r.  2014 Utility Trailer MFG – Van, VIN: 1UYVS2532EU781202;

s.  2014   Kenworth   Construction   –   Tractor   Truck   –   T680,   VIN: 1XKYD49X8EJ400473;

t.  2014 Peterbilt 389 - Tractor Truck, VIN: 1XPXD49X0ED217699;

u.  2014 Reitnouer Trailer - Flatbed, VIN: 1RND53A24ER030526;

v.  2015 Peterbilt 579 – Tractor Truck, VIN: 1XPBD49X3FD279190;

w.  2015 Peterbilt 579 – Tractor Truck, VIN: 1XPBD49X8FD279184;

x.  2016   Kenworth   Construction   –   Tractor   Truck   –   T680,   VIN: 1XKYD49X2GJ484227;

y.  2016   Kenworth   Construction   –   Tractor   Truck   –   T680,   VIN: 1XKYD49X2GJ499231;

z.  2016 Peterbilt 579 – Tractor Truck, VIN: 1XPBD49X9GD337336;

aa. 2016 Benson Trailer - Flatbed, VIN: 1TTE532A3G3917784;

bb. 2016 Fontaine Trailer - Flatbed, VIN: 13N1532C7G1517746;

cc. 2016 Fontaine Trailer - Flatbed, VIN: 13N1532C3G1518599;

dd. 2016 Fontaine Trailer – Flatbed, VIN: 13N1532C8G1518565;

ee. 2018 Great Dane Trailers – Van, VIN: 1GRAA0625JW111352; and

ff.  2020 Transcraft Corp – Flatbed, VIN: 1TTE532C0L3197579,

5.    If any of the property described above, as a result of any act or omission of the Defendants:

a.    cannot be located upon the exercise of due diligence;

b.    has been transferred or sold to, or deposited with, a third party;

c.    has been placed beyond the jurisdiction of the court;

d.    has been substantially diminished in value; or

    e.    has been commingled with other property which cannot be divided

without difficulty,

the United States of America will be entitled to the forfeiture of substitute property pursuant to

Title 21, United States Code, Section 853(p).

DATED: _____                 A TRUE BILL.


                                               _____

                                               FOREPERSON

SAYLER A. FLEMING
United States Attorney


_____

GWENDOLYN E. CARROLL #4657003NY
Assistant United States Attorney

23